UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

| | : | |
|---|---|---|
| KELONTAE CARTER, | : | CASE NO. 4:19-cv-00208 |
| Petitioner, | : | ORDER |
| | : | [Resolving Doc. 1] |
| vs. | : | |
| WARDEN CHRISTOPHER LAROSE, | : | |
| Respondent. | : | |

---

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Petitioner Kelontae Carter is currently serving a 23-year-to-life sentence in Ohio for aggravated murder.[1]

Petitioner filed a 28 U.S.C. § 2254 habeas petition.[2] After briefing, Judge Greenberg filed a report and recommendation ("R&R") recommending dismissal.[3] Petitioner makes one objection to the R&R.[4]

For the following reasons, the Court **ADOPTS** the report and recommendation and **OVERRULES** Petitioner's objections. The Court **DISMISSES** Carter's petition.

I. Background

The R&R thoroughly recounts the facts and procedural posture of Petitioner Carter's

---

[1] Doc. 1 at 6; Doc. 6 at 6–7. The Ohio jury found Carter guilty of all charges, which included: "aggravated murder in violation of Ohio Rev. Code § 2903.01(B)(F), accompanied by a firearm specification; aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1)(C), accompanied by a firearm specification; and, alternatively, murder in violation of Ohio Rev. Code § 2903.03(B)(D), accompanied by a firearm specification; and felonious assault in violation of Ohio Rev. Code § 2903.11 (A)(2)(D), accompanied by a firearm specification." Doc. 9 at 6. The Ohio trial court sentenced Carter to 20-years-to-life for aggravated murder and 3 years for the firearm specification, merging the remaining charges. *Id*. at 6.

[2] Doc. 1.
[3] Doc. 9.
[4] Doc. 13.

Case No. 4:19-cv-00208
Gwin, J.

case.[5] Briefly, in December 2015, an Ohio jury found Petitioner Carter guilty of aggravated murder with firearm specifications.[6]

In April 2013, Kristopher Stewart was shot to death in his house. Petitioner Carter and his uncle, DeJuan Thomas, went to Stewart's house to rob Stewart or obtain drugs.[7] Carter provided different versions of events to the police, but the trip resulted in Stewart's death, Thomas in critical condition from gunshot wounds, and Carter with one large close-range gunshot wound in his arm.[8] A ballistics expert determined that three different guns were used in the incident.[9] Carter said that he did not have a gun.[10]

Pertinent to Petitioner's objection to the R&R, Petitioner Carter's uncle, DeJuan Thomas, died before trial.[11] Thomas's "longtime friend," Jonathan Queener, testified at trial. Queener said that he had been in the county jail with Thomas and that Thomas said "he and [Carter] went to rob the victim; he told [Carter] they were going to get money and try to get drugs; the victim pulled out a .357; they exchanged fire; and Appellant dropped him off at the hospital."[12] Queener received reduced charges in his own unrelated case in return for agreeing to testify truthfully.[13]

After his conviction, Petitioner Carter pursued appellate relief in Ohio courts and eventually filed a 28 U.S.C. § 2254 habeas petition in this Court.[14] Carter's habeas petition

---

[5] Doc. 9 at 2–9.
[6] *Id.* at 6.
[7] *Id.* at 2, 4. Eventually, Petitioner Carter denied that they intended to rob the victim. *Id.* at 5.
[8] *Id.* at 2–5.
[9] *Id.* at 3–4.
[10] *Id.* at 5.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 7–9.

-2-

Case No. 4:19-cv-00208
Gwin, J.

claimed five grounds for relief, which Judge Greenberg addressed in his R&R.[15] Judge Greenberg recommended dismissing Petitioner's claim.[16]

## II. Discussion

### a. Legal Standard

The Federal Magistrates Act requires that a district court conduct a *de novo* review of objected-to portions of a report and recommendation.[17] The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[18]

Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal court cannot grant a habeas petition for any claim the state court decided on the merits unless the state court's decision

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[19]

### b. Petitioner's Objection

Petitioner makes one objection to the R&R's finding that his Sixth Amendment rights were not violated when the trial court allowed, in Petitioner's words, a "jailhouse snitch to testify to an alleged out-of-court statement that [Carter's] deceased co-defendant made."[20]

Carter contends that Judge Greenberg erred when he found that Thomas's statements

---

[15] *Id.* at 9–10.
[16] *Id.* at 55.
[17] 28 U.S.C. § 636(b)(1).
[18] *Id.*
[19] 28 U.S.C. § 2254(d); *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).
[20] Doc. 13 at 1.

-3-

Case No. 4:19-cv-00208
Gwin, J.

to Queener were nontestimonial.[21] The R&R concluded that there was "no evidence that Thomas anticipated his old friend would report his statements to law enforcement, and no basis for an objective witness reasonably to believe that the statement would be available for a later trial."[22]

Nontestimonial statements do not implicate Sixth Amendment confrontation concerns.[23] Petitioner Carter's confrontation rights were not violated if the primary purpose of Thomas's comments to Queener was nontestimonial.

As the R&R explained, testimonial statements are those "the declarant must have 'intend[ed] to bear testimony against the accused.' . . . This determination 'depends on whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.'"[24]

Petitioner objects. At trial, Queener said that Thomas told Queener about the murder because he was angry at Petitioner Carter for speaking with the police. This anger, Petitioner says, makes it likely that Thomas knew "the statement would be used in some testimonial capacity."[25] Thomas was in jail facing charges for the murder and Queener knew this, so Petitioner contends that "the primary purpose of the conversation [was] potentially relevant to later criminal prosecution, rather than the casual conversation the Report alludes to."[26]

Petitioner Carter urges that the Court must consider "all of the relevant circumstances"

---

[21] *Id.* at 1–2.
[22] Doc. 9 at 27–28.
[23] *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Davis v. Washington*, 547 U.S. 813, 821 (2006); *U.S. v. Johnson*, 581 F.3d 320, 324–25 (6th Cir.2009).
[24] *U.S. v. Collins*, 799 F.3d 554, 576 (6th Cir. 2015) (quoting United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004) and *U.S. v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009)).
[25] Doc. 13 at 3.
[26] *Id.*

Case No. 4:19-cv-00208
Gwin, J.

when deciding whether the Thomas's statements' primary purpose was testimony.[27] To Petitioner, Queener's assessment that Thomas was angry is a critical circumstance that changed Thomas's statements' primary purpose.[28]

But it is not clear how Thomas's anger indicates that he spoke to Queener in an effort to "create a record for trial."[29] If anything, anger could suggest that Thomas was less temperate and strategic when discussing his case. The R&R explained that courts routinely find that "unwitting statements to a confidential informant, where [the] speaker does not know that the informant is working with law enforcement" are not testimonial.[30] Those situations are comparable to the facts in this case.

Further, the *Crawford* court made the distinction that someone "who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."[31] Likewise, the Supreme Court in *Davis* called "statements made unwittingly to a Government informant" and "statements from one prisoner to another" "clearly nontestimonial."[32] Regardless of whether Thomas's comments were "casual" or whether Queener was an informant when he spoke with Thomas, Petitioner Carter has not shown that Thomas's anger meant that he intended his comments to be used as testimony for a future trial.

---

[27] Doc. 13 at 2 (citing *Ohio v. Clark,* 576 U.S. 237, 244 (2015)).
[28] Doc. 13 at 3.
[29] *Clark,* 576 U.S. at 244.
[30] Doc. 9 at 27.
[31] *Crawford,* 541 U.S. at 51.
[32] *Davis v. Washington,* 547 U.S. 813, 825 (2006); cf. *Jensen v. Pliler,* 439 F.3d 1086, 1088–90 (9th Cir. 2006) (concluding that an unavailable declarant's statements to his attorney were nontestimonial); *U.S. v. Pike,* No. 01 CR 129A, 2006 WL 582042, at *2 (W.D.N.Y. Mar. 6, 2006) (finding that a jailhouse "confession [that] occurred in the context of a friendly conversation" where Defendant "had no reason to believe that [his friend] would repeat his statement to the authorities" was nontestimonial).

Case No. 4:19-cv-00208
Gwin, J.

Finally, after reviewing Carter's petition and the R&R, the Court agrees with the R&R's findings.

### III. Conclusion

For the foregoing reasons, the Court **ADOPTS** the report and recommendation and **OVERRULES** Petitioner's objection. The Court **DISMISSES** Carter's petition.


IT IS SO ORDERED.


Dated: May 12, 2021            *s/     James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE